# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7425 | **DATE** | 9/17/2004 |
| **CASE TITLE** | Taylor, Bean & Whitaker vs. Cebulak et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  As stated in the attached Memorandum Opinion and Order, defendants' motions to dismiss [24-1, 27-1, 28-1] are granted in part and denied in part. Status hearing set for 10/21/04 at 9:00 a.m. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

5
number of notices

date docketed

docketing deputy initials

9/17/2004
date mailed notice

| KF | courtroom deputy's initials | | KF | mailing deputy initials |
|---|---|---|---|---|

Document Number

76

U.S. DISTRICT COURT

2004 SEP 17 AM 9:08

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TAYLOR, BEAN & WHITAKER    )
MORTGAGE CORPORATION, a    )
Florida corporation,    )
   )
   Plaintiff,    )
   )    No. 03 C 7425
   v.    )
   )    Mag. Judge Michael T. Mason
VINCENT CEBULAK, et al.,    )
   )
   Defendants.    )

**MEMORANDUM OPINION AND ORDER**

DOCKETED
SEP 2 0 2004

Michael T. Mason, United States Magistrate Judge:

Before the court are three motions to dismiss: (1) defendants Northwest Fidelity Mortgage Corp. ("Northwest") and Dorothy Kawa's ("Kawa") joint motion to dismiss Counts I, II, IV, VII, VIII, IX, and X of plaintiff's complaint; (2) defendants Prime Realty, Inc. ("Prime Realty") and Vincent Cebulak's ("Cebulak") joint motion to dismiss Counts I, II, IV, IX, and X of plaintiff's complaint; and (3) defendant Marta Kwietniewska's ("Kwietniewska") motion to dismiss Counts I, II, IV, VII, VIII, IX, and X of plaintiff's complaint. For the reasons set forth below, defendants' motions are granted in part and denied in part.

***Factual Background***

Plaintiff Taylor, Bean & Whitaker Mortgage Corp. ("Taylor Bean") filed a ten-count complaint against the following twenty-five defendants: Wojtek Lis, Vincent Cebulak, Andrzej Szudzinski, Stations Café, Storc Construction, Inc., Prime Realty, Northwestern Fidelity Mortgage Corp., Dorothy Kawa, Thomas Groh, Tadeusz Twarog,

Eugene Developers, Inc., Eugene Fraczek, Universal Appraisal Service, Inc., Janusz Kozera, Daniel Lesniak, Malgorazata Grzybowska, Piotr Grzybowski, Jan Sztorc, Marta Kwietniewska, Zbigniew Kasza, Andrezj Szudinski, Mark Locascio, Jean Locascio, Edward Whitefield, and Richard Ross. Plaintiff has either voluntarily dismissed or obtained a default judgment against nineteen of these twenty-five defendants. Plaintiff has asserted federal subject matter jurisdiction pursuant to both federal question jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1964, and diversity jurisdiction under 28 U.S.C. §1332. Defendants do not take issue with federal subject matter jurisdiction under either ground.

Counts III, V, and VI of plaintiff's complaint allege fraud claims solely as to dismissed or defaulted defendants and are therefore dismissed. Further, plaintiff has voluntarily dismissed its breach of contract claim (Count VIII) as to defendants Kawa and Kwietniewska. This opinion addresses plaintiff's remaining seven claims against five of the six remaining defendants: Cebulak, Prime Realty, Northwest, Kawa, and Kwietniewska (collectively "Defendants").[1]

Plaintiff's complaint primarily alleges that Defendants have been participants in an illegal scheme to defraud Taylor Bean through a series of fraudulent mortgage transactions.[2] According to plaintiff, the original defendants fall into seven categories:

---

[1]Mark Locascio, the sixth remaining defendant, chose not to file a motion to dismiss plaintiff's complaint. Instead, he answered the complaint on March 5, 2004.

[2]Plaintiff also makes a single reference to "other lenders" on page 2 of its complaint. However, there are no facts in the 44-page complaint to suggest that any other lenders were defrauded as part of defendants' alleged scheme. See Cross v. Simons, 729 F. Supp. 588, 595 (N.D. Ill. 1989) (quoting SK Hand Tool Corp. v. Dresser Industries, Inc., 852 F.2d 936, 942 (7th Cir. 1988) ("A general allegation referring to other purported victims which 'contains no well-pleaded facts permitting us to conclude that some [other] investors may have been hurt by the

(1) buyers or sellers of real estate for which mortgages were allegedly fraudulently obtained; (2) real estate brokers; (3) mortgage brokers; (4) individuals funding the real estate transactions with knowledge of the ongoing fraud; (5) recipients of funds from the alleged fraud; (6) appraisers who misrepresented the value of the real estate involved in the fraud; and (7) attorneys who participated in the real estate closings with knowledge of the fraudulent purpose.[3] Generally, plaintiff alleges that defendants purchased multi-unit residential complexes at fair market value and then appraised individual units within the multi-unit complexes at values far in excess of their fair market value. Plaintiff further alleges that defendants falsified loan applications to induce plaintiff to enter into mortgage agreements and loan the purchasers of those units amounts up to fives times more than the fair market value of the mortgaged property. Thereafter the purchasers defaulted on their loans and Taylor Bean foreclosed on the individual units. At the time of foreclosure, the principle due on the outstanding loans far exceeded the fair market value of the individual units.

Specifically, the seven remaining claims in plaintiff's complaint allege that: (1) Defendants violated Sections 1962(a) and (d) of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count I); (2) Defendants violated RICO Sections 1962(c) and (d) (Count II); (3) Defendants committed common law fraud (Count IV); (4) Kawa, Kwietniewska, and Northwest breached their fiduciary duties to plaintiff (Count VII); (5) Northwest breached its contract with plaintiff (Count VIII); (6) Defendants have

alleged fraud' is insufficient.").

[3]The defendant purchasers, appraisers, and attorneys have either been defaulted or voluntarily dismissed.

been unjustly enriched to the detriment of plaintiff (Count IX); and (7) Defendants committed common law conspiracy (Count X).

In deciding these motions to dismiss, we accept plaintiff's well-pleaded allegations as true and draw all reasonable inferences from these facts in plaintiff's favor. *Travel All Over the World, Inc. v. The Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996). This case arises from six real estate transactions involving Taylor Bean and Defendants. Taylor Bean provides residential mortgage lending services. Cebulak is a real estate broker and the sole proprietor of Prime Realty, a real estate brokerage business. Kwietniewska owns forty-nine percent of Northwest, which provides title commitment and real estate closing services. Kwietniewska is also Northwest's incorporator, secretary and/or president. Kawa is a loan officer, loan processor, and secretary at Northwest.

### Building I

On February 1, 2001, Jan Sztorc, president, registered agent, and incorporator of Storc Construction, a company that builds and rehabilitates residential and commercial structures, purchased a six-flat building in Chicago, Illinois ("Building I") for $285,000. Sztorc transferred ownership of Building I, by quitclaim deed, to Storc Construction on May 18, 2001. Approximately two weeks later, on June 4, 2001, at the request of Kawa or another agent of Northwest, and with the full knowledge of the other Defendants, Thomas Groh, the owner of Universal Appraisal, appraised three individual units within Building I, Units #1N, #2S, and #3N, at values far in excess of their actual market value. Specifically, Groh appraised #1N at $169,500 and #2S at $169,500. The complaint does not contain Groh's appraisal figure for #3N.

In August 2001, Storc Construction sold those three units. On August 9, 2001, Malgorazata Grzybowska ("Grzybowska") entered into a contract to purchase and did purchase Unit #1N for $167,500. The real estate sales contract listed Janusz Kozera ("Kozera") of Prime Realty as the realtor for Unit #1N. That same day, with the assistance of Andrezj Szudzinski ("Szudzinski"), a loan officer for Northwest, Grzybowska mortgaged the property to Taylor Bean for $134,000 and executed a note in favor of Taylor Bean obligating her to repay $134,000 in principal at 7.625% interest amortized over thirty years. In determining whether to lend Grzybowska the $134,000, Taylor Bean relied on Groh's appraisal and evaluated and relied on the information contained in the Uniform Residential Loan Application ("Loan Application") and related documents that Defendants "intended to provide and/or did in fact provide . . . to Taylor Bean via U.S. mail and/or telephone, facsimile and/or computer network lines for the purpose of facilitating their scheme to defraud Taylor Bean." *Complaint* ¶ 119. On August 9, 2001, Grzybowska signed a Re-certification of Employment and Income form ("Re-certification form") certifying that the information in the Loan Application was still accurate. At some point, the Re-certification form was transmitted to Taylor Bean via U.S. mail, facsimile or other electronic or computer transmission. Szudzinski obtained the information contained in the Loan Application through a personal interview with Grzybowska. The Loan Application contained incorrect information including, *inter alia*, misrepresentations about Grzybowska's income, employment verifications, identity, social security number, marital status, and personal financial information.

Proceeds from the mortgage transaction between Taylor Bean and Grzybowska were distributed among the defendants. Sometime after August 9, 2001, Taylor Bean

5

sold Grzybowska's mortgage to GMAC Mortgage Corp. ("GMAC"). Subsequently, GMAC sold the mortgage to Freddie Mac and Grzybowska defaulted on the loan. On October 30, 2002, Freddie Mac sent GMAC a written notice requesting that GMAC repurchase the mortgage. Two weeks later, on November 12, 2002, GMAC sent Taylor Bean a written notice requesting that it repurchase the mortgage. Thereafter, Taylor Bean repurchased the mortgage from Freddie Mac and foreclosed on the property. A broker's price opinion ("BPO") completed on April 15, 2003 valued the property at $36,000, far less than the principal due Taylor Bean on the note.

The facts surrounding the sale and mortgage of the remaining two units in Building I, Units #2S and #3N, are similar to the transaction described above. On August 30, Zbigniew Kasza ("Kasza") entered into a real estate contract to purchase and did purchase Unit #2S for $168,500. Kozera was the realtor listed on the real estate sales contract. That same day, with the assistance of one of Northwest's agents, Kasza mortgaged the property to Taylor Bean for $134,800 and executed a note in favor of Taylor Bean obligating him to repay $134,800 in principal at 7.5% interest amortized over thirty years.

In determining whether to loan Kasza the $134,800, Taylor Bean relied on Groh's appraisal and evaluated and relied on the information contained in the Loan Application and related documents the Defendants "intended to provide and/or did in fact provide . . . to Taylor Bean via U.S. mail and/or telephone, facsimile and/or computer network lines for the purpose of facilitating their scheme and defrauding Taylor Bean." *Complaint* ¶ 143. Kawa obtained the information contained in the Loan Application through a personal interview with Kasza. The Loan Application contained

incorrect information including, *inter alia*, misrepresentations about Kasza's income, employment verifications, and her personal financial information. On August 30, 2001, Kasza signed a Re-certification form, affirming that the information contained in the Loan Application was still accurate. The form was transmitted to Taylor Bean via U.S. mail, facsimile, or some other electronic or computer transmission.

Proceeds from the mortgage transaction between Taylor Bean and Kasza were distributed among the Defendants. Sometime after August 30, 2001, Taylor Bean sold the mortgage to GMAC, who in turn sold the mortgage to Fannie Mae. Thereafter, Kasza defaulted on the loan, Taylor Bean repurchased the loan from Fannie Mae and foreclosed on the property. A BPO completed on August 18, 2003 valued the property at $36,000.

On May 20, 2001, Sztorc contracted to sell the last of the three disputed units in Building I. On that day, Daniel Lesniak ("Lesniak") entered into a real estate sales contract with Sztorc to purchase Unit #3N for $169,500. Kozera was the realtor listed on the real estate sales contract. Lesniak purchased the property on August 3, 2001. That same day, with the assistance of one of Northwest's agents, Lesniak mortgaged the property to Taylor Bean for $135,600 and executed a note in favor of Taylor Bean obligating him to repay $135,600 in principal at 7.625% interest amortized over thirty years.

In determining whether to loan Lesniak the $135,600, Taylor Bean evaluated and relied on the information contained in the Loan Application and related documents the defendants "intended to provide and/or did in fact provide . . . to Taylor Bean via U.S. mail and/or telephone, facsimile, and/or computer network lines for the purpose of

facilitating their scheme and defrauding Taylor Bean." *Complaint* ¶ 165. Kawa obtained the information contained in the Loan Application through a personal interview with Lesniak. The Loan Application contained incorrect information including, *inter alia*, misrepresentations about Lesniak's income, employment verifications, and personal financial information.

Proceeds from the mortgage transaction between Taylor Bean and Lesniak were distributed among the defendants. Sometime after August 3, 2001, Taylor Bean sold the mortgage to GMAC, who in turn sold the mortgage to Fannie Mae. Thereafter, Taylor Bean repurchased the mortgage from Fannie Mae and foreclosed on the property. An August 13, 2003 BPO valued the property at $36,000.

### Building II

On February 9, 2001, Jan Sztorc, purchased a second six-flat building in Chicago, Illinois ("Building II") for $320,000. On May 18, 2001, along with Building I, Sztorc transferred ownership of Building II, by quitclaim deed, to Storc Construction. On June 4, 2001, at the request of Kawa or another agent of Northwest and with the full knowledge of the other defendants, Thomas Groh appraised three individual units within Building II, Units #1N, #2N, and #2S, at values far in excess of their actual fair market value. The complaint does not state Groh's appraisal values for Units #1N or #2N, however he appraised Unit #2S at $176,000.

Between August and October 2001, Storc Construction sold Units #1N, #2N, and #2S. On October 9, 2001, Wojtek Lis ("Lis") purchased Unit #1N for $176,000. That same day, with the assistance of Kawa, he mortgaged the property to Taylor Bean for $140,800 and executed a note in favor of Taylor Bean obligating him to repay $140,800

8

in principal at 7.25% interest amortized over thirty years. In determining whether to lend Lis the $140,800, Taylor Bean evaluated and relied on the information contained in the Loan Application and related documents the Defendants "intended to provide and/or did in fact provide via U.S. mail and/or telephone, facsimile and/or computer network lines for the purpose of facilitating their scheme and defrauding Taylor Bean." *Complaint* ¶41. Kawa obtained the information contained in the Loan Application through a personal interview with Lis. The Loan Application contained incorrect information including, *inter alia*, misrepresentations about Lis' income, employment verifications, social security number, personal financial information, and the parcel number of the subject property recorded on the title policy and the mortgage. Proceeds from the mortgage transaction between Taylor Bean and Lis were distributed among the Defendants. Sometime after November 9, 2001, Taylor Bean sold Lis' mortgage to GMAC, who in turn sold it to Fannie Mae. Lis defaulted on the loan and Fannie Mae foreclosed on the property on February 26, 2003. Thereafter, Taylor Bean repurchased the mortgage from Fannie Mae. The market value of the subject property is far less than the principal on the note due Taylor Bean.

The facts surrounding the sale and mortgage of the remaining two units in Building II, Units #2N and #2S, are similar to the transaction described above. On September 20, 2001, Piotr Grzybowski ("Grzybowski") purchased Unit #2N for $172,900. The real estate sales contract listed Kozera of Prime Realty as the realtor for Unit #2N. That same day, with the assistance of Kawa, Grzybowski mortgaged the property to Taylor Bean for $138,320 and executed a note in favor of Taylor Bean obligating him to repay $138,320 in principal at 8% interest amortized over thirty years.

9

In determining whether to lend Grzybowski the $138,320, Taylor Bean evaluated and relied on the information contained in the Loan Application and related documents that Defendants "intended to provide and/or did in fact provide . . . to Taylor Bean via U.S. mail and/or telephone, facsimile and/or computer network lines for the purpose of facilitating their scheme and defrauding Taylor Bean." *Complaint* ¶ 66. Kawa obtained the information contained in the Loan Application through a personal interview with Grzybowski. The Loan Application contained incorrect information including, *inter alia*, misrepresentations about Grzybowski's income, marital status, employment information and verifications, identity, and personal financial information.

Proceeds from the mortgage transaction between Taylor Bean and Grzybowski were distributed among the defendants. Sometime after September 20, 2001, Taylor Bean sold the mortgage to GMAC, who in turn sold it to Fannie Mae. Thereafter, Grzybowski defaulted on the loan, Taylor Bean repurchased the mortgage from Fannie Mae and foreclosed on the property. A BPO completed on August 14, 2003 valued the property at $30,000, far less than the principal on the note due Taylor Bean.

On August 30, 2001, Tadeusz Twarog ("Twarog") entered into a real estate sales contract with Sztorc to purchase a third unit in Building II, Unit #2S, for $172,900. Kozera was the realtor listed on the real estate sales contract. According to the warranty deed, Twarog purchased Unit #2S on September 21, 2001. The previous day, with the assistance of Kawa, Twarog mortgaged the property to Taylor Bean for $138,320 and executed a note in favor of Taylor Bean obligating him to repay $138,320 in principal at 7.5% interest amortized over thirty years.

In determining whether to loan Twarog the $138,320, Taylor Bean evaluated and relied on the information contained in the Loan Application and related documents the Defendants "intended to provide and/or did in fact provide . . . to Taylor Bean via U.S. mail and/or telephone, facsimile and/or computer network lines for the purpose of facilitating their scheme and defrauding Taylor Bean." *Complaint* ¶ 91. Kawa obtained the information contained in the Loan Application through a personal interview with Twarog. The Loan Application contained incorrect information including, *inter alia*, misrepresentations about Twarog's income, employment verifications, social security number, and personal financial information.

Proceeds from the mortgage transaction between Taylor Bean and Twarog were distributed among the Defendants. Sometime after September 20, 2001, Taylor Bean sold the mortgage to GMAC, who in turn sold it to Fannie Mae. Thereafter, Twarog defaulted on the loan and Fannie Mae foreclosed on the property on November 24, 2002. The appraisal value of the property was $28,000 on December 17, 2002. Taylor Bean repurchased the mortgage from Fannie Mae sometime after May 7, 2003, and, according to the complaint, thereafter foreclosed on the property again.

On April 18, 2003, Taylor Bean was named as a defendant by the City of Chicago in a suit it filed alleging various violations of the Municipal Code of Chicago in connection with the six above mentioned properties in Buildings I and II. *See City of Chicago v. Storc Construction, et al.*, No. 03 M 1400403.

### Legal Analysis

Defendants have challenged the complaint under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). A complaint based on fraud must state "the identity of the person making the misrepresentation, the time, the place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992). To state it another way, plaintiffs are required "to plead in detail the 'who, what, when, where, and how' of the circumstances constituting the fraud." *Cumis Ins. Soc'y, Inc. v. Peters*, 983 F. Supp. 787, 792 (N.D. Ill. 1997) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

This heightened pleading requirement is designed "to force plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Rule 9(b) "serves three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint and is not designed to resolve the case on the merits. *Petri v. Gatlin*, 997 F. Supp. 956, 963 (N.D. Ill. 1997). A complaint should only be dismissed pursuant to Rule 12(b)(6) if "it is clear

12

that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaldings*, 467 U.S. 69, 73 (1984).

### Counts I and II - RICO §§ 1962(a), (c) & (d)

The RICO Act was an attempt by Congress to "eradicate organized, long-term criminal activity." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). RICO Section 1962(a) provides:

> [i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . .

To state a §1962(a) violation, plaintiff must allege "the receipt of income from a pattern of racketeering activity, and the use of that income in the operations of an enterprise." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 972-73 (7th Cir. 1986).

Further, RICO Section 1962(c) provides :

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

According to the Supreme Court, this portion of the statute means that "[t]he elements predominant in a subsection (c) violation are: (1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Salinas v. United States*, 522 U.S. 52 (1997).

Finally, RICO section 1962(d) provides:

[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a),(b), or (c) of this section.

The Seventh Circuit has held that to state a viable claim under §1962(d), a plaintiff must allege "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998).

### Pattern of Racketeering Activity

The natural starting point in our analysis of plaintiff's RICO claims is an examination of the meaning of "pattern of racketeering activity," because Taylor Bean must allege such a pattern of activity under subsections (a), (c), *and* (d) of section 1962, the subsections that provide the basis for its claims.

A pattern of racketeering activity consists of "at least two predicate acts of racketeering committed within a ten-year period." 18 U.S.C. §1961(5). "Predicate acts are acts indictable under a specified list of criminal laws, 18 U.S.C. §1961(1)(B), including mail fraud under 18 U.S.C. §1341, and wire fraud under 18 U.S.C. §1343." *Midwest*, 976 F.2d at 1019.

### Predicate Acts

In its complaint, Taylor Bean has alleged eight predicate acts of either mail or wire fraud. *See Complaint* ¶¶ 41, 66, 91, 119, 120, 143, 147, 165. Specifically, plaintiff alleges that "[o]n information and belief, Defendants intended to provide and/or did in

14

fact provide [individual] loan application[s] and related documents [for each of the six purchasers of the individual residential units] to Taylor Bean via U.S. mail and/or telephone, facsimile and/or computer network lines for the purpose of facilitating their scheme and defrauding Taylor Bean." *See Complaint* ¶¶ 41, 66, 91, 119, 143, 165. Plaintiff further alleges that Defendants sent Re-certification forms for two of the purchasers via U.S. mail, facsimile or other electronic or computer transmission, verifying that the information on their respective Loan Applications was still accurate.

Defendants argue that plaintiff has not alleged the above predicate acts with sufficient particularity to satisfy Rule 9(b). Plaintiff disagrees stating that it has met both the heightened Rule 9 standard and a relaxed particularity requirement it argues should apply to this case because of the disparity of knowledge between plaintiff and defendants regarding the predicate acts. As stated above, Rule (9) mandates that plaintiff plead the who, what, when, where, and how of the predicate acts. *See Emery v. American Gen'l Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998). However, the court can relax the pleading requirements upon a showing that plaintiff needs discovery to obtain the particulars of the alleged fraud that could not have been obtained without discovery. *Id.* at 1323.

Plaintiff was or should have been the recipient of the Loan Applications and Re-certification forms ("Documents"). Therefore, it cannot show a need for discovery in order to obtain particulars about the alleged predicate acts. The relevant information should be in its possession. That said, plaintiff has not met the Rule 9 pleading requirements. First, plaintiff does not specify which of the twenty-five named defendants allegedly sent or intended to send the Documents. Next, plaintiff fails to

15

state whether the Documents were actually sent or received and fails to provide the date of the alleged transmissions. Finally, plaintiff does not specify whether the Documents were sent via mail or wires. Plaintiff also did not attach an example of any of the Documents, or anything else for that matter, to its complaint. *See generally Midwest*, 976 F.2d at 1020.

### The Requisite Pattern

Even if plaintiff had alleged the purported predicate acts with the requisite specificity, its RICO claims must still be dismissed because plaintiff has failed to allege a pattern of racketeering. To establish a pattern, plaintiff must not only allege two predicate acts, but must also meet the "continuity plus relationship" test which requires that "the predicate acts must be related to one another (the relationship prong) *and* pose a threat of continued criminal activity (the continuity prong)." *Midwest*, 976 F.2d at 1022 (citing *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989)). The parties do not dispute that plaintiff has satisfied the relationship prong. Therefore, we limit our analysis to the continuity prong.

"Continuity is 'both a closed- and open-ended concept'." *Midwest*, 976 F.2d at 1022 (quoting *H.J., Inc.*, 492 U.S. at 241). A closed-ended period of racketeering involves a course of conduct that has terminated. *Id.* "To satisfy the continuity element in a closed-ended case, the plaintiff must prove a series of related predicates enduring a 'substantial period of time'. The underlying rationale is that the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future." *Id.* (quoting *H.J., Inc.*, 492 U.S. at 241) (internal citations omitted).

16

"An open-ended period of racketeering, by contrast, is a course of criminal activity which lacks the duration and repetition to establish continuity." *Id*. at 1023. Under this concept, the plaintiff must show past conduct that "by its nature projects into the future with a threat of repetition." *Id*. Specifically, plaintiff must show "(1) a specific threat of repetition, (2) that the predicate acts or offenses are part of an ongoing entity's regular way of doing business, or (3) that the defendant operates a long-term association that exists for criminal purposes." *Id*. (internal quotations omitted). "In sum, a RICO plaintiff can prevail by either (1) demonstrating a closed-ended conspiracy that existed for such an extended period of time that a threat of future harm is implicit, or (2) an open-ended conspiracy that, while short-lived, shows clear signs of threatening to continue into the future." *Id*.

### *Closed-ended Analysis*

In *Morgan v. Bank of Waukegan*, the Seventh Circuit outlined a multifactor continuity test for determining whether a closed-ended pattern of racketeering has been established. 804 F.2d 970, 975 (7th Cir. 1986). Continuity is a function of: (1) the duration of the predicate acts, (2) the number and variety of predicate acts, (3) the number of victims, (4) the presence of separate schemes, and (5) the inflictions of distinct injuries. *Id*. Duration is "the closest thing we have to a bright-line continuity test: the predicate acts must extend over a substantial period of time; a few weeks or months is considered insubstantial." *Midwest*, 976 F.2d at 1024 (quoting *H.J., Inc.*, 492 U.S. at 242) (internal quotations omitted).

The first predicate act of mail or wire fraud occurred around August 2001 and the final predicate act of mail or wire fraud occurred around October 2001. We cannot be sure as to the specific date because plaintiff failed to plead the alleged predicate acts with the required Rule 9 specificity. However, the first of the six mortgage transactions at issue in the complaint closed on August 9, 2001 and the final mortgage transaction closed on October 9, 2001. The Loan Applications and supporting documentation must have been transmitted during or in close proximity to this three-month time period. Although the Seventh Circuit has not established a per se durational requirement, in *Midwest* it provided an expansive list of cases where it found a duration of less than two years insufficient to establish continuity under a closed-ended analysis. *Midwest*, 976 F.2d at 1024 (citing *J.D. Marshall Int'l., Inc. v. Redstart, Inc.*, 935 F.2d 815, 819 (7th Cir. 1991) (thirteen months); *U.S. Textiles, Inc. v. Anheuser-Busch Co., Inc.*, 911 F.2d 1261, 1266 (7th Cir. 1990) (sixteen months); *Hartz v. Friedman*, 919 F.2d 469, 473 (7th Cir. 1990) (eighteen months); *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1393 (7th Cir. 1990) (four to five months); *Olive Can Co., Inc. v. Martin*, 906 F.2d 1147, 1148-49 (7th Cir. 1990) (six months); *Management Computer Serv., Inc. v. Hawkins, Ash, Baptie & Co.*, 883 F.2d 48, 50 (7th Cir. 1989) (several months); *Sutherland v. O'Malley*, 882 F.2d 1196, 1204 (7th Cir. 1989) (five months). Under Seventh Circuit precedent, the approximate three-month duration plaintiff has pled is insufficient to allege a pattern of racketeering.

Plaintiff attempts to overcome this glaring deficiency in its pleading by arguing that the pattern of racketeering began in April 2000, apparently when Northwest and

Taylor Bean entered into a written contract whereby Northwest agreed to provide Taylor Bean with mortgage brokerage services. As a matter of law, this transaction cannot mark the beginning of an alleged pattern of racketeering because it does not constitute a predicate act under the statute. *Midwest*, 976 F.2d at 1024, n.5.

For completeness, we also quickly address the remaining *Morgan* factors, which militate against a finding of continuity. Plaintiff has only alleged eight predicate acts which are most likely of the same variety (mail or wire fraud), although as discussed *supra*, we cannot say conclusively because of the lack of specificity in plaintiff's pleading. Further, there is a single victim (Taylor Bean[4]), a single scheme (to defraud Taylor Bean) and *at most* six distinct injuries, but most likely one (loss of loan money). These factors do not support the finding of a closed-ended pattern of racketeering and definitely do not suggest the existence of a long-term criminal operation. In fact, plaintiff appears to have a garden variety fraud claim.

### Open-ended Analysis

Plaintiff has also failed to establish an open-ended pattern of racketeering. The Seventh Circuit has made clear that "schemes which have a clear and terminable goal have a natural ending point. Such schemes therefore cannot support a finding of any specific threat of continuity that would constitute open-ended continuity." *Vicom*, 20 F.3d at 782. Plaintiff can also allege open-ended continuity by showing that "the predicate acts are a regular way of conducting [the] defendant's ongoing legitimate business." *Id.* (quoting *H.J., Inc.*, 492 U.S. at 243).

---

[4]As addressed *supra*, plaintiff's single reference to "other lenders" on page 2 of the complaint is not sufficient to suggest that there were multiple victims of the alleged scheme.

Defendants allegedly participated in a scheme to defraud Taylor Bean through a series of fraudulent mortgage transactions. *Complaint* ¶ 1. That scheme consisted of six allegedly fraudulent mortgage transactions that took place between approximately August and October of 2001. Plaintiff did not file its complaint until almost two years after the final allegedly fraudulent mortgage transaction occurred, and the complaint does not include any facts to suggest that Defendants committed any fraudulent mortgaged transactions between November 2001 and October 21, 2003, the date the complaint was filed. The alleged scheme appears to have a natural ending point, when the individual units within Buildings I and II were sold and mortgaged to Taylor Bean. Further, cursory and unparticularized allegations that Defendants continue to engage in racketeering activity does not alter our conclusion. *See Vicom*, 20 F.3d at 783. The facts as pled in the complaint cannot support such an inference.

Moreover, as stated above, plaintiff failed to sufficiently allege any predicate acts and therefore has not alleged that those acts were Defendants' regular way of conducting business. Accordingly, plaintiff has failed to alleged open-ended continuity. Because each of plaintiff's RICO claims are premised on the existence of a pattern of racketeering activity, which it has failed to properly plead, Taylor Beans' RICO claims pursuant to §1962(a), (c), and (d) must be dismissed. Further we decline to address Defendants' arguments regarding the reinvestment requirement under §1962(a). Without a properly pled allegation of a pattern of racketeering, any reinvestment arguments are moot. Similarly, there is no need to address the parties' arguments regarding "enterprise" and "conduct."

### Count IV - Common Law Fraud

Now we turn to plaintiff's common law fraud claim. As stated above, this court found that plaintiff has not pled the required predicate acts in its RICO claims with the requisite Rule 9 particularity. However, plaintiff's failure to adequately plead predicate acts under the RICO statute does not necessarily mandate the dismissal of its common law fraud claim. Plaintiff's RICO claims are premised on multiple predicate acts of mail and/or wire fraud. To the contrary, plaintiff's common law fraud claim is not, and need not be, premised on predicate acts of mail or wire fraud. Under a common law theory, plaintiff is allowed to plead fraud without specifying the specific mode of transmission.

To state a claim for common law fraud, a plaintiff must allege: "(1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury." *Vazquez v. Sears, Roebuck & Co.*, 1999 WL 965556 *5 (N.D. Ill. Sept. 30, 1999) (quoting *Cramer v. Ins. Exchange Agency*, 174 Ill.2d 513, 675 N.E.2d 897 (1996)).

Plaintiff sufficiently pleads each of the elements of common fraud in its complaint. First, plaintiff lists each remaining defendant individually and alleges that during the negotiation and execution of the mortgages on the units at issue in this case, each remaining defendant requested that Groh appraise the units in excess of their market values and then represented to Taylor Bean that Groh's inflated appraisals reflected the actual market value of those units. Second, plaintiff pleads that those

21

representations were false and Defendants knew they were false in so far as they new the actual value of the units was substantially less than the appraisals. Third, plaintiff alleges that Defendants intended for plaintiff to rely on those fraudulent appraisals and plaintiff, justifiably, did rely on them to its detriment. Accordingly, Defendants' motions to dismiss are denied as to Count IV.

### Count VII - Breach of Fiduciary Duty

To adequately plead a claim for breach of fiduciary duty under Illinois law, plaintiff must allege (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) an injury resulting from that breach. *Lucini Italia Co. v. Grappolini,* 2003 WL 1989605, at *5 (N.D. Ill. Apr. 28, 2003). Illinois common law requires that claims for breach of fiduciary duty be pled with particularity; however, because this claim is brought in federal court, plaintiff is merely required to meet the Rule 8 requirement that it provide the minimal allegations sufficient to apprise Defendants of the charges against them. *DeLeon v. Beneficial Construction Co.,* 55 F. Supp. 819, 827 (N.D. Ill. 1999). A fiduciary duty is "[a] duty to act with the highest degree of honesty and loyalty toward another person in the best interest of that other person." BLACK'S LAW DICTIONARY 523 (7th ed. 1999).

The complaint alleges that Northwest and its agents owed plaintiff a fiduciary duty based on the broker-lender relationship between the parties. This broker-lender relationship was created when Northwest and Taylor Bean entered into an April 27, 2000 contract. Defendants argue that plaintiff has failed to allege any facts from which a fiduciary relationship could arise. As a general rule "parties to a contract are not each other's fiduciaries." *Original Great Am. Chocolate Chip Cookie Co. v. River Valley*

*Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992). However, breach of fiduciary duty claims are "controlled by the substantive laws of agency, contract and equity." *Capitol Indem. Corp. v. Stewart Smith Intermediaries, Inc.*, 229 Ill. App. 3d 119, 593 N.E.2d 872, 876 (1992). An agency relationship is "a fiduciary relationship created by express or implied contract or by law, in which one party may act on behalf of another party and bind that other party to words or actions." BLACK'S LAW DICTIONARY 62 (7th ed. 1999). "Once an agency relationship is found, a fiduciary relationship arises as a matter of law." *Peterson v. H & R Block Tax Services., Inc.*, 971 F. Supp. 1204, 1213 (N.D. Ill. 1997).

Thus, the question is whether the contractual agreement between the parties created an agency relationship. Defendant Northwest maintains that it merely had a "business relationship memorialized in a contract," which did not create a fiduciary duty. *Northwest's Motion to Dismiss* at 9. Not surprisingly, plaintiff argues that the relationship between the parties did in fact create a fiduciary duty. In support of its claim, plaintiff cites to *Reese* and *DeLeon* for the proposition that when a plaintiff engages a defendant in mortgage brokerage services, a fiduciary duty is created. *See Reese v. Hammer Financial Corp.*, 1999 WL 1101677, *4 (N.D. Ill. Nov. 30, 1999); *DeLeon*, 55 F.Supp. at 827. Defendants failed to address these cases in their reply briefs. However, we find that they are not directly on point. In *Reese* and *DeLeon*, the plaintiffs were borrowers who contracted with the defendant mortgage brokers to obtain loan financing on their behalf.

In the case *sub judice*, the plaintiff is the lender, not the borrower, who contracted with the defendant mortgage broker to find prospective borrowers. The case of *In re Bumpers* is far more analogous to the facts presently before this court. 2003 WL 22119929, *8 (N.D. Ill. Sept. 11, 2003). In *In re Bumpers*, the court found that whether a broker can be deemed an agent of a particular lender is a question of fact. *Id.* (citing *In re Dukes*, 24 B.R. 404, 414 (Bankr. E.D. Mich. 1982). The court found that such a determination should be made based on whether the cumulative evidence "indicates that the party claiming to be a mere broker, in fact had a close relationship or far more authority than that of simply bringing the borrower and lender together." *Id.* In such cases, "the court may deem the broker to be the agent of the lender" and thus its fiduciary. *Id.* Because the presence or absence of an agency relationship between Taylor Bean and Northwest is a question of fact better left for determination at summary judgment, Taylor Bean has sufficiently pled an agency relationship for purposes of a motion to dismiss. *See also Salem Mills, Inc. v. Wisconsin Tool and Stamping Co., Inc.*, 881 F. Supp. 1109, 1117-18 (N.D. Ill. 1995) (agency is a question of fact); *Inter-American Insurance Co.*, 1989 WL 88382 (N.D. Ill. July 28, 1989) ( "Whether or not an agency relationship exists is a question of fact."). Consequently, because plaintiff has pled an agency relationship, as a matter of law, it has pled a fiduciary duty.

Plaintiff has also sufficiently pled the remaining two elements of this tort, a breach of that fiduciary duty and an injury resulting therefrom. Specifically, plaintiff states that "defendants breached their duty to [p]laintiff when they purposely obtained fraudulent appraisals" and "purposefully provided loan applications and supporting

24

documentation which they knew or should have known contained false information,"
damaging plaintiff "in the amount of the difference between the mortgage loan and the
actual market value of the Subject Properties." *Complaint* ¶¶ 240-242. Accordingly,
Northwest's motion to dismiss Count VII is denied.

The complaint also contains breach of fiduciary duty claims against Kawa and
Kwietniewska, individually, based on a subagency principle. Having found that Taylor
Bean has sufficiently stated a principle-agent relationship and thus a fiduciary duty
between itself and Northwest for the purposes of a motion to dismiss, we must now
determine whether Taylor Bean has sufficiently pled a fiduciary duty between itself and
Kawa, an employee of Northwest, and Kwietniewska, the incorporator, secretary and/or
president and 49% owner of Northwest. *See Complaint* ¶ 13.

A subagent is "a person appointed by an agent to perform some duty relating to
the agency." BLACK'S LAW DICTIONARY 65 (7th ed. 1999). A subagent also owes a
fiduciary duty to the principal and can be liable in tort for any breach of that duty. *In re
Salem Mills*, 881 F. Supp. at 1117. Similar to the existence of an agency relationship,
the existence of a subagency relationship is a question of fact best left for determination
at summary judgment. *Id.* at 1117-18. Kawa was employed as a loan officer, loan
processor, and secretary at Northwest. According to the complaint, as part of her
employment duties at Northwest, Kawa requested that Groh appraise the individual
units at issue in this case at values far in excess of their actual market values. She also
conducted the interviews with some of the purchasers, during which she obtained
fraudulent information for the Loan Applications that were submitted to Taylor Bean.
Finally, Kawa assisted some of the purchasers of the individual units in mortgaging their

property to Taylor Bean. Plaintiff has alleged that Kawa was its subagent and participated in the conduct giving rise to its claim for breach of fiduciary duty. *See Reese*, 1999 WL 1101677, *5. Accordingly, Kawa's motion to dismiss Count VII is denied.

As for Kwietniewska, Illinois law provides corporate officers and directors with "a conditional privilege that protects them from personal liability for their decisions made on behalf of the corporation." *Reese*, 1999 WL 1101677, *5 (citing *Stafford v. Puro*, 63 F.3d 1436, 1442 (7th Cir. 1995). However, corporate officers remain liable in tort for their participation in the conduct giving rise to the liability. *Id.*

Accepting all plaintiff's well-pleaded allegations as true and drawing all reasonable inferences in plaintiff's favor as we must, plaintiff has also sufficiently pled a breach of fiduciary duty claim against Kwietniewska. Plaintiff alleges that Kwietniewska represented to Taylor Bean that Groh's appraisals accurately reflected the market value of the disputed units, knowing that the statement was false and that the value of the units was far less than the figure reflected in the appraisal reports. *Complaint* ¶¶ 218-220. Accordingly, Kwietniewska's motion to dismiss is denied as to Count VII.

**Count VIII - Breach of Contract**

Next, we address plaintiff's claim for breach of contract. To prevail on a breach of contract claim under Illinois law, a plaintiff must establish (1) the existence of a valid and enforceable contract, (2) his own performance under the terms of the contract, (3) a breach of the contract by the defendant, and (4) an injury suffered as a result of the defendant's breach. *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 311

26

(N.D. Ill. 1995); *Aardvark Art, Inc. v. Lehigh/Steck-Warlick, Inc.*, 284 Ill. App. 3d 627, 672 N.E.2d 1271, 1275 (1996). Federal court is a notice pleading jurisdiction, therefore complaints need not contain elaborate factual recitations. *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Under such a liberal pleading standard, we find that plaintiff has adequately pled a breach of contract claim against Northwest.

Northwest argues that Count VIII should be dismissed because plaintiff has failed to plead that it fully performed its duties under the contract, or that Northwest breached the contract. Northwest does not dispute that plaintiff has sufficiently pled the existence of a contract and damages. *See Complaint* ¶¶ 244, 248. We agree with Northwest that Taylor Bean has not specifically alleged its own compliance with the April 27, 2000 contract. However, under our liberal notice pleading standard, "the complaint need only inform a defendant of the charge against him by concisely narrating the incident or incidents in question." *Petri v. Gatlin*, 997 F. Supp. 956, 965 (N.D. Ill. 1997). Plaintiff's complaint provides Northwest with notice of the nature of the breach of contract claim against it and "the hypothesis that the [plaintiff] fulfilled [its] contractual obligations is certainly consistent with the allegations in the complaint." *Id.* at 966. Therefore, plaintiff has adequately pled the second element of a breach of contract claim.

Plaintiff has also adequately pled a breach of the April 27, 2000 contract. The contract provided:

> "Broker [Northwest] shall submit to Lender [Taylor Bean] for each registered loan the application signed by the applicant and such credit,

27

> financial and other information necessary for Lender to investigate,
> underwrite and fully review the application." *Complaint* ¶ 244.

In its complaint, plaintiff alleges that Northwest breached its duty when it "purposely

provided loan applications and supporting documentation which [it] knew or should

have known contained false information." At this stage in the case, an allegation that

defendant provided false information could be seen as the failure to provide plaintiff

with the information necessary to investigate, underwrite and fully review a Loan

Application. Therefore, plaintiff has sufficiently pled a breach of the contract claim.

Accordingly, Northwest's motion to dismiss Count VIII for breach of contract is denied.

### Count IX - Unjust Enrichment

"The essence of a claim for unjust enrichment is that one party has received a

benefit unfairly and that it would be unjust to allow the recipient to retain the

enrichment." *Shapo v. O'Shaughnessy*, 246 F. Supp. 2d 935, 968 (N.D. Ill. 2002). To

state a valid claim for unjust enrichment, plaintiff must allege "that there has been

unjust retention of a benefit to the plaintiff's detriment." *Dames & Moore v. Baxter &*

*Woodman, Inc.*, 21 F. Supp. 2d 817, 827 (N.D. Ill. 1998).

Under the liberal pleading standards in federal court, plaintiff has sufficiently pled

a claim for unjust enrichment. Taylor Bean has alleged that Defendants made

fraudulent statements to induce it into financing multiple mortgage loans, and that

Defendants were unjustly enriched by the receipt and benefit of funds in connection

with the fraudulent mortgage loan transactions to plaintiff's detriment. Accordingly,

Defendants' motions to dismiss are denied as to Count IX.

28

### Count X - Common Law Conspiracy

Finally, we address plaintiff's common law conspiracy claim. "Under Illinois law, a civil conspiracy must include: (1) an agreement by two or more people to accomplish some unlawful purpose or some lawful purpose by unlawful means; and (2) at least one tortious act by one of the conspirators in furtherance of the agreement." *Roger Whitmore's Automotive Services, Inc. v. Lake County*, 2002 WL 959587, *10 (N.D. Ill. May 9, 2002) (citing *Adcock v. Brakegate, Ltd.,* 164 Ill.2d 54, 645 N.E.2d 888, 894 (1994)). "The agreement is 'a necessary and important' element of this cause of action." *VR Holdings, Inc. v. LaSalle Business Credit, Inc.*, 2002 WL 356515 at *6 (quoting *Adcock*, 164 Ill.2d at 62-64.) Because civil conspiracy is an intentional tort, plaintiff must further allege that Defendants "knowingly and voluntarily participate[d] in a common scheme to commit an unlawful act or lawful act in an unlawful manner." *Id.* "Mere knowledge of the fraudulent or illegal actions of another is not sufficient to show a conspiracy." *Id.* However, "[a] defendant who understands the general objective of the conspiratorial scheme, accepts them, and agrees, either explicitly or implicitly to do its part to further those objectives is liable as a conspirator." *Id.* Further, a plaintiff satisfies the pleading requirements merely by alleging sufficient facts from which a conspiracy can be inferred. *Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985).

Based on these standards, plaintiff has sufficiently pled a claim for conspiracy. It has identified the nature of the conspiracy (to defraud plaintiff), the conspirators (Defendants), and the actions the alleged conspirators took in furtherance of the conspiracy (fraud, breach of fiduciary duty, and breach of contract). Plaintiff may be

able to prove facts in support of its claim for civil conspiracy. Accordingly, Defendants' motions to dismiss are denied as to Count X.

## Conclusion

For the reasons set forth above, Defendants' motions to dismiss are granted in part and denied in part. Counts I and II as to all Defendants and Count VIII as to Kawa and Kwietniewska are dismissed without prejudice. If plaintiff believes that it can reformulate Counts I and II to comport with this opinion, which we doubt, it may present a proposed amended complaint and move for leave to file it within thirty days. Otherwise, Counts I, II, and VIII will be dismissed with prejudice.

Counts III, V, and VI of plaintiff's complaint are dismissed as to all defendants. Northwest's motion to dismiss is denied as to Count VIII. Further, Defendants' motions to dismiss are denied as to Counts IV, VII, IX, and X. The next status hearing is scheduled for October 21, 2004. It is so ordered.

ENTER:

MICHAEL T. MASON
United States Magistrate Judge

Dated: September *17*, 2004